OPINION
{¶ 1} Defendant-appellant Edward Huscusson appeals his conviction in the Tuscarawas County Court of Common Pleas on two felony counts of driving under the influence. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Pursuant to a routine traffic stop after a state trooper observed appellant weaving in and out of traffic lanes, appellant was found to have a strong odor of alcohol on his breath. He performed poorly on the field sobriety testing, and ultimately exceeded the legal blood alcohol limit after submitting to a BAC test.
 {¶ 3} At the time of his arrest, appellant provided the false name of David J. Bergmeyer with a date of birth and social security number matching the information of David J. Bergmeyer. Appellant signed all of the processing paperwork with the false name and was released to appear in court. Subsequent to appellant's true identity being discovered, appellant was indicted on October 1, 2002, on two counts of felony driving under the influence, six counts of forgery, one count of misdemeanor obstructing official business and one count of theft.
 {¶ 4} Prior to trial, appellant filed a motion to suppress the BAC test results. At a January 15, 2004 suppression hearing, the parties stipulated to the introduction of a calibration solution affidavit, a photocopy of a certified copy provided by the Ohio Department of Health to the State Highway Patrol. The trial court admitted the affidavit. However, prior to trial, the trial court allowed the State to submit the certified copy of the calibration solution affidavit as evidence at trial.
 {¶ 5} At the March 9, 2004 jury trial in this matter, the arresting trooper testified from a LEADS printout as to the verification of appellant's identity using the LEADS photographs of the appellant and David Bergmeyer. The trial court overruled appellant's motion to suppress and his objection to the introduction of the LEADS printouts. Following the jury trial, appellant was found guilty on the above counts, but not guilty on an amended charge of unauthorized use of a motor vehicle (as to the theft count). On May 1, 2004, the trial court, via Judgment Entry, accepted the jury verdict and imposed a prison sentence.
 {¶ 6} Appellant now appeals his May 1, 2004 conviction, assigning as error:
 {¶ 7} "I. The trial court erred in admitting into evidence uncertified copies of leads printouts which were hearsay and not properly authenticated.
 {¶ 8} "II. There was insufficient evidence to admit into evidence the alleged prior driving under the influence convictions of the accused.
 {¶ 9} "III. The trial court erred when it established a post-hearing briefing schedule to allow submission of post-hearing legal memoranda relating to suppression issues over the stipulations made by the parties at the suppression hearing."
 I, II {¶ 10} Appellant's first and second assignments of error raise common and interrelated issues; therefore, the assignments will be addressed together.
 {¶ 11} Appellant maintains the trial court erred in admitting the uncertified copies of the LEADS printouts, arguing they were hearsay and not properly authenticated. As a result, he further asserts there was insufficient evidence to admit the prior convictions evidenced in the LEADS printouts.
 {¶ 12} At trial, State Trooper Arthur Wood explained the manner in which he verified appellant's identity. He testified he compared photographs of David Bergmeyer and of the appellant obtained from the Law Enforcement Automated Data Service ("LEADS") printouts. He then utilized the BMV information pertaining to appellant's date of birth and social security number to conduct a records check. In doing so, he became aware of appellant's prior convictions. At trial the following exchange took place regarding Trooper Woods' testimony:
 {¶ 13} "Trooper woods:
 {¶ 14} "A. We have LEADS terminal at the Highway Patrol Post. It's a computer that's inter-faced with the Bureau of Motor Vehicle computers and you can pull up people's driving records and registrations and that type of thing.
 {¶ 15} "Q. At that point through Shamrah or through the dispatcher had you been provided with the defendant's name?
 {¶ 16} "A. Right.
 {¶ 17} "Q. So you knew that it potentially was Edward Huscusson.
 {¶ 18} "A. Right.
 {¶ 19} "Q. All right. So, armed with that information explain your computer work.
 {¶ 20} "A. Basically typed in the name Edward Huscusson and got one Edward Huscusson in the whole state of Ohio.
 {¶ 21} "MR. LATANICH: Object, Judge, and move to strike.
 {¶ 22} * * *
 {¶ 23} "MR. LATANICH: I believe that the testimony of the Trooper especially in relation to this only Edward Huscusson that they have in the state of Ohio should be stricken. This is obviously hearsay. I can't — it's an out of court statement designed to prove the truth of the matter asserted. There's no way for me to adequately cross examine whether or not the computer terminal was working properly, whether or not it was — whoever keyed it in was doing it correctly, * * *
 {¶ 24} "MR. LATANICH: From those documents. That's obviously hearsay. That is an element that they're going to argue to this jury now. They're going to argue to the jury that this was proven from the hearsay computer's terminal statement that I can't cross examine, that there's no other Ed Huscussons in the State of Ohio. An element of to get the prior convictions into evidence they have to prove the Ed Huscusson in those prior convictions is the Ed Huscusson and —
 {¶ 25} * * *
 {¶ 26} "MR. STEPHENSON: It's simply explaining the investigation that the officer undertook to ascertain the true identity of the person he arrested. He's describing the steps, explaining that he used that Huscusson name to pull up the photograph.
 {¶ 27} "THE COURT: Right.
 {¶ 28} "MR. STEPHENSON: And he will compare that photograph to the photograph of David Bergmyer. And that he compared these two photographs. We've got them printed out from LEADS and that when he compared the two he became certain that the person he arrested based upon the photograph and comparing to the person in court today that the person he arrested was Edward Huscusson.
 {¶ 29} * * *
 {¶ 30} "MR. LATANICH: That's exactly what they're trying to do here. They're trying to prove all the elements of their case through the LEADS printout, through stuff they pull off of a computer and it's not even — at the very least I mean they could've at least try to go get some sort of certified copy of something from the Bureau of Motor Vehicles. They haven't even done that. At least there's some indicia of reliability of somebody's authenticating it they're just pulling it off some computer and saying here, now this proves the elements that we want to prove in open court.
 {¶ 31} "MR. STEPHENSON: (Inaudible) that photograph, ascertain that that is who you arrested and you get his social security number, date of birth and assure yourself that you've arrested the person. We didn't have that here. We didn't get that information so we've gotta work backwards. This explains what the officer did. He used this photograph, compared it to the other.
 {¶ 32} * * *
 {¶ 33} "Got the social security number and then used that to —
 {¶ 34} "THE COURT: Get K off of the LEADS print out or the LEADS computer.
 {¶ 35} "MR. STEPHENSON: And then from there you check what his record is. All this goes back to me proving the elements. Gerry's making this stuff an element when it's really not. The element the State has to prove is the prior convictions.
 {¶ 36} "THE COURT: Right.
 {¶ 37} "MR. STEPHENSON: We have all the certified copies.
 {¶ 38} "THE COURT: I understand.
 {¶ 39} "MR. STEPHENSON: The statue on point, 2945.75(B) indicates that whenever it's necessary to prove a prior conviction a certified copy of the entry of judgment in that conviction, together with evidence sufficient to identify the defendant named in the entry as the offender is sufficient to prove the prior conviction. We've gotta explain the process since we didn't get truthful information from the defendant as to those judgment entries. And that's what the officer did. He got this printed out, highlighted the three prior DUI convictions. From there you get the — you've used the date of birth, social security number, address, name, blah, blah, blah. You look at the court code, the conviction date and the case number and then you go to the court to get those particular judgment entries. That's the evidence sufficient to link the element we have to prove to this defendant.
 {¶ 40} "THE COURT: Right.
 {¶ 41} "MR. STEPHENSON: So we're hamstrung again because we didn't get the truthful information to begin with so we're explaining generally the process the officer employed in ascertaining the true identity of this defendant and what his record was and how we got those certified records.
 {¶ 42} "THE COURT: I follow you. Now, Bob, let me interrupt and say if I'm correct Gerry is arguing that this objection to State's K is it's not certified. Is that right, Gerry?
 {¶ 43} "MR. LATANICH: Right.
 {¶ 44} "THE COURT: And if it was certified you wouldn't have any objection to it.
 {¶ 45} "MR. LATANICH: That's right, I'd have no objection to it.
 {¶ 46} "THE COURT: If it's certified. What's your response?
 {¶ 47} "MR. STEPHENSON: This is a duplicate of what — this is the actual print out from the computer as of that day. And explains what he did.
 {¶ 48} "THE COURT: And who ran this LEADS, do you know?
 {¶ 49} "MR. STEPHENSON: Probably the dispatcher at the request of the officer.
 {¶ 50} "THE COURT: All right but you're not calling the dispatcher.
 {¶ 51} "MR. STEPHENSON: Don't need to. It's a self authenticating duplicate original of the stuff that's in the computer.
 {¶ 52} "THE COURT: And Gerry's argument is that somebody — and who would you suggest the person is that would be the required person to certify this document?
 {¶ 53} "MR. LATANICH: Somebody from the Ohio Bureau of Motor Vehicles where that is their job to collect and collate all this stuff and then certify that what they put into it is true. At least then there's some indicia of reliability. There is no indicia of reliability." Tr. at 120-121, 123-127, 130, 132-135.
 {¶ 54} Turning to appellant's assignment of error, generally, the admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173. Therefore, we will not disturb a trial court's evidentiary ruling unless we find a ruling to be an abuse of discretion; i.e., unreasonable, arbitrary or unconscionable and not merely an error of law or judgment.State v. Adams (1980), 62 Ohio St.2d 151, 404 N.E.2d 144.
 {¶ 55} The trial court properly admitted the LEADS printouts to verify appellant's identity, not to prove the elements of the offense. See, Statev. Drabic (Jan. 2, 1996), Tusc. App. No. 95 AP 02 0005. The evidence was properly admitted for non-hearsay purposes, including demonstrating Trooper Wood's process and reasoning in verifying appellant's identity. As a result, the trial court did not err in admitting the evidence, and the certified copies of the prior convictions was sufficient evidence to establish appellant's prior convictions.
 {¶ 56} Appellant's first and second assignments of error are overruled.
 III {¶ 57} In his third assignment of error, appellant argues the trial court erred in allowing the state to submit the authenticated copy of the calibration solution affidavit posthearing over the stipulations made by the parties at the suppression hearing.
 {¶ 58} At the January 15, 2004 hearing on appellant's motion to suppress the parties stipulated to the following:
 {¶ 59} "MR. LATANICH: We would stipulate to not the admissibility of, but the fact that there is a calibration solution affidavit from the state of Ohio. We want the court to though after this hearing to compare the copies to the originals and then at that point in time I have every intention because of our stipulation that this is what would've been put into evidence. We would then file post hearing memoranda as to whether or not the sobriety tests will be suppressed, and whether or not the breath test should be suppressed for a violation of something in my motion to suppress."
 {¶ 60} Upon review, appellant stipulated to the unauthenticated copy of the calibration solution affidavit, indicating he desired the court to compare the copy to the original and he expected the same to be put into evidence. Appellant did not object to the authenticity of the copy or of the original. Rather, he challenged whether the Department of Health Regulations had been complied with in compiling the affidavit. Therefore, appellant waived his objection to the authenticated original affidavit, and there is no prejudice to appellant as a result of the trial court's admission of the authenticated original pursuant to the prior stipulation.
 {¶ 61} Appellant's third assignment of error is overruled.
 {¶ 62} Appellant's May 1, 2004 conviction in the Tuscarawas County Court of Common Pleas is affirmed.
Hoffman, J., Gwin, P.J. and Boggins, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the May 1, 2004 Judgment Entry of the Tuscarawas County Court of Common Pleas is affirmed. Costs assessed to appellant.